ARKWRIGHT MILLS v. UNITED STATES.

District Court, D. Massachusetts.	July 10, 1928.

No. 3043.

1. Internal revenue ⬦⟹38(2)—Letter accepting taxpayer's offer in settlement of "outstanding assessments" aggregating specified sum held to entitle taxpayer to recover overassessment applied on assessment without notice. (Revenue Act 1921, §§ 252, 253 [Comp. St. §§ 6336⅛uu, 6336⅛v]).

Letter reciting Treasury Department's acceptance of "$75,000 to settle by compromise a total outstanding assessment of $145,414.69" for specified years, including $64,006.21 for 1917, though it overlooked fact that 1917 assessment had been reduced by credit of over $13,000 for overassessment, under Revenue Act 1921, § 252 (Comp. St. § 6336⅛uu), *held* to entitle taxpayer, who paid the $75,000 to recover overassessment, respecting application of which on 1917 tax it had received no notice, notwithstanding it must be charged with knowledge of section 253 (Comp. St. § 6336⅛v), requiring excess payment to be credited to outstanding taxes; "outstanding assessment" being one that has not been paid.

2. Internal revenue ⬦⟹28(1)—Government will be held to its agreement adjusting and settling disputed tax claim.

It is the policy of the court to uphold, when possible, agreements which aim to adjust disputed claims, and court will not overlook compromise, but will hold parties bound by the settlement; and this rule applies to government's settlement of tax claims as well as to individuals.

At Law. Action by the Arkwright Mills against the United States. Judgment for plaintiff.

Friedman, Atherton, King & Turner, of Boston, Mass., for plaintiff.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass.

BREWSTER, District Judge. This is a petition brought to recover $13,726.72 paid to the United States on account of income and excess profits taxes, which the petitioner claims was in excess of the amount legally due. The merits of the case were heard upon an agreed statement of facts, from which it appears that a controversy arose between the petitioner and respondent over additional assessments of income and excess profits taxes for the years 1916 to 1919, inclusive, aggregating $145,414.69. These additional assessments were as follows: $1,713,57 for the year 1916; $64,006.21 for the year 1917; $55,556.28 for the year 1918; $24,138.63 for the year 1919.

In March, 1924, the petitioner made an offer to compromise these additional assessments. This offer was rejected April 23, 1924. On May 26, 1924, the petitioner was notified that an audit of its income and profits tax returns for the year 1920 showed that there had been an overassessment of $13,726.72 and was advised that, unless the overassessment was shown to be incorrect, a certificate of overassessment would reach the petitioner in due course through the office of the collector of internal revenue for the district of Massachusetts, and would be applied by that official in accordance with section 252 of the Revenue Act of 1921 (Comp. St. § 6336⅛uu).

On August 4, 1924, the petitioner submitted another offer of compromise which, on August 22, 1924, was transmitted to the Commissioner of Internal Revenue, with a favorable recommendation by the collector. On September 20, 1924, the collector of internal revenue applied the overassessment of $13,726.72 against the additional assessment for 1917, one of the years involved in the controversy. No notice of this application was given to the petitioner until it received the certificate of overassessment about January 10, 1925. On October 7, 1924, the second offer was rejected. On October 27, 1924, without actual knowledge of the action of the collector in applying the overassess-

ment, the petitioner again increased its offer to $75,000. With each offer the petitioner had paid to the collector the amount of the offer. The last offer was accepted in a communication received by the petitioner from the Solicitor of Internal Revenue under date of December 9, 1924, which reads:

"Treasury Department, Washington.

"Sol: P: TDB.         December 9, 1924.

"199724.

"Arkwright Mills, Fall River, Mass.— Sirs: The Commissioner of Internal Revenue has considered the proposition submitted by you on October 29, 1924, through the collector of internal revenue at Boston, Mass., as a compromise for failure to pay additional tax assessed in amount of $145,414.69 for the years 1916 to 1919, inclusive, and settlement of said assessment, and has decided, with the advice and consent of the Secretary of the Treasury, to close the case by the acceptance of the following terms:

"$75,000.00 to settle by compromise a total outstanding assessment of $145,414.69 for the years 1916 to 1919, inclusive, being $1,713.57 for 1916, $64,006.21 for 1917, $55,- 556.28 for 1918, and $24,138.63 for 1919, together with penalty and accumulated interest for failure to pay the same on demand within the time prescribed by law.

"Respectfully,

"[Signed]    Nelson T. Hartson,

        "Solicitor of Internal Revenue.

"Audited: Geo. R. Lawton."

At all conferences which took place between the representative of the petitioner and the Commissioner of Internal Revenue or his representatives, both before and after September 20, 1924, no other figures of a tax liability of the Arkwright Mills were discussed than the figures of the original additional amounts as set forth above.

[1] The terms of the petitioner's last offer are not before me, except as described in the letter of the Solicitor of Internal Revenue. The language of that letter can convey only one meaning, namely, that the offer which the Treasury Department accepted was an offer of $75,000 in full settlement of *outstanding* assessments aggregating $145,414.- 69, which expressly included the 1917 assessment of $64,006.21. I take it that an outstanding assessment is one that has not been paid, and an outstanding assessment of $64,- 006.21 cannot be said to mean an original assessment for that amount, upon which $13,- 726.72 has been applied as a credit.

If full effect is to be given to the intention of the parties to the compromise agree-

ment, the petitioner has overpaid the respondent to the extent of the 1920 taxes.

Obviously, the letter of the solicitor accepting the offer of $75,000 overlooked the fact that the 1917 assessment had been reduced by the credit, and when the offer was made the petitioner had no notice of what application had been made. It had a right to rely on the assurances of the respondent that it would receive certificate of overassessment in due course, and while it must be chargeable with knowledge of section 253 (Comp. St. § 6336⅛v), which required the excess payment to be credited to outstanding taxes, it was entitled to proceed on the assumption that, pending settlement of the disputed taxes by compromise, it would be seasonably notified if its overpayment of the 1920 tax was credited against any of the items involved in the controversy. The delay of nearly eight months between the first notice of the overassessment and the date when the certificate of overassessment reached the petitioner would seem to be wholly unwarranted. It cannot be explained without imputing negligence or incompetence on the part of some one connected with the office of the collector. This failure to act in accordance with ordinary administrative diligence resulted to the prejudice of the petitioner, and I regard the government as estopped to now assert a right to take advantage of an error on the part of the petitioner for which its agents were directly responsible. I believe the solicitor, who accepted the offer of $75,000, acted in good faith, and that he intended his letter to be read as I read it.

[2] It is quite probable that the credit had not been brought to his attention. In any event, a settlement was reached whereby the petitioner was to pay $75,000, and not $88,- 726.72, in full discharge of its total outstanding tax liability for the years 1916 to 1919, inclusive, and since it is the policy of the court to uphold, when possible, agreements which aim to adjust disputed claims, "the court will not overlook the compromise but will hold the parties bound by the settlement." Ely & Walker Dry Goods Co. v. United States (District Court for the Eastern Division of the Eastern Judicial District of Missouri; decided December 2, 1927, not for publication).

I believe this policy requires that the government, as well as the individual, be held to its agreement. I do not question the statutory authority of the collector to credit the excess payment to outstanding assessments

and I do not decide that proceedings to collect the overassessment could be maintained. Nor am I unmindful of the argument which the government advances that the petitioner had notice of an overassessment and was put upon inquiry as to what application was to be made with respect to it. But I look upon this case as one to be decided upon fundamental principles of justice and fair dealing. To these, presumptions more or less artificial must give way. The total tax liability of the petitioner for 1916, 1917, 1918, and 1919 was to be wholly discharged by the payment of $75,000.

I have no doubt the minds of the parties met on that understanding. Through no fault of the petitioner, and presumably through neglect on the part of some representative of the government, a mistake was made, as a result of which the petitioner has paid to discharge that liability $13,726.27 in excess of the sum required to be paid by the terms of that agreement, and it is entitled to recover that sum, with legal interest.

I so find and rule.